

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ORIGINAL
FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 1 3 2003

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

WILLIAM CHAVIS,

        Plaintiff,

    v.

CLAYTON COUNTY SCHOOL
DISTRICT, JOE A. HAIRSTON and
OZIAS PEARSON, individually and
as agents and employees of the
CLAYTON COUNTY SCHOOL
DISTRICT,

        Defendants.

CIVIL ACTION

NO. 1:99-CV-2843-BBM

## O R D E R

This action, alleging violation of 42 U.S.C. § 1985(2), is before the court on remand from the Eleventh Circuit Court of Appeals. At issue is the defendants' second motion for summary judgment [Doc. No. 35-1].

## I.    Factual and Procedural Background

On November 1, 1999, Dr. William Chavis ("Chavis") filed the instant lawsuit against his employer, Clayton County School District ("CCSD"), and his supervisors, Dr. Ozias Pearson ("Pearson") and Dr. Joe A. Hairston ("Hairston"). In the complaint, Chavis alleges that the CCSD engaged in discriminatory practices implemented primarily by Pearson and Hairston. As a result of these allegedly



discriminatory practices, Chavis asserted claims under 28 U.S.C. §§ 1983 and 1985, as well as several state common law doctrines.

The relationship between the parties began in July 1996, when Chavis accepted a position with the CCSD as the Director of Certified Personnel. Chavis' duties in this position included recruitment of teachers and investigation of misconduct. Chavis' immediate supervisor was defendant Pearson, and Pearson's immediate supervisor was co-defendant Hairston, the superintendent of the CCSD. Each of these men is African-American. In his complaint, Chavis asserts that Hairston and Pearson made it the policy of CCSD to discriminate against white employees by unfairly disciplining them and denying them promotions and favorable positions. Chavis alleges that his attempts to stop these practices by voicing his objections resulted in retaliatory employment actions against him, including threats of a transfer out of the personnel department and eventual demotion from his position as Director of Certified Personnel to a position as Coordinator of Student Services.

Throughout the litigation, Chavis describes a variety of incidents he believes involve discriminatory action on the part of Pearson and Hairston. The most important involves Doris Walker ("Walker"), a white teacher accused of entering into a sex-for-grades pact with a 16-year-old African-American male student. Chavis was ordered to investigate the incident. During Chavis' investigation, three review

panel members interviewed Walker, her accuser, and various witnesses. The panel concluded that Walker did not engage in sex with the student, but they recommended her suspension with pay and referral to the Georgia Professional Practices Commission. Chavis did not believe that Walker had engaged in any sexual misconduct, and the panel agreed.

After the CCSD panel completed its investigation, state officials independently decided to prosecute Walker. In his deposition, Chavis testifies that Pearson ordered him to attend the state probable cause hearing to ensure that Walker did not change her story. Chavis did not want to attend the hearing and objected to Pearson's order. However, he reluctantly attended and was called to testify. He gave testimony favorable to Walker, and no arrest warrant was issued. The judge dismissed the charges on February 14, 1997. Despite the lack of evidence against Walker, Hairston sent Walker a letter stating that she was being suspended because the evidence supported his conclusions that she had sex with the student. Walker was not reinstated until October 6, 1997, when the Georgia Professional Practices Commission issued its report exonerating Walker, ordering her reinstatement, and casting doubt on the student and his witnesses' credibility.

Chavis testifies that his relationship with Pearson and Hairston deteriorated after his testimony in the Walker proceedings. He alleges that in June of 1997, Pearson informed him that Hairston wanted him out of the personnel department.

According to Chavis, he was to start looking for positions as a guidance counselor or assistant principal. Viewing Pearson's statements as a threat, Chavis interviewed for new positions and considered accepting a job as a guidance counselor outside the CCSD. Then, Pearson and Hairston allegedly gave Chavis a second chance, and he remained in his personnel position. However, in December 1997, ten months after the testimony in the Walker proceeding, Chavis was involuntarily transferred to a position as Coordinator of Student Services. The parties disagree as to the reason for Chavis' transfer. The parties also disagree as to whether this transfer constituted a demotion.

Based on these incidents, Chavis filed suit in November 1999. After discovery concluded in the instant lawsuit, CCSD, Pearson, and Hairston moved for summary judgment as to all of Chavis' claims. On March 6, 2001, this court dismissed the case, granting summary judgment to the defendants on Chavis' federal law claims and refusing to exercise pendant jurisdiction over the remaining state law claims. Subsequently, Chavis appealed the court's grant of summary judgment to the Eleventh Circuit.[1] The Court of Appeals upheld this court's decision regarding Chavis' section 1983 claim. However, the Eleventh Circuit disagreed with the court's interpretation of section 1985(2) and held that the plaintiff had presented sufficient

---

[1] Chavis did not appeal the court's dismissal of his state law claims. As such, those claims are no longer pending before this court.

evidence to support a retaliation claim under this statute.  The Court of Appeals remanded the case "so the district court may consider whether summary judgment is otherwise appropriate."  Chavis, 300 F.3d 1288, 1294 (11th Cir. 2002).  In doing so, the Eleventh Circuit noted that specific issues required this court's consideration, including "whether CCSD could be held liable for Hairston and Pearson's alleged acts, whether the alleged retaliation is causally connected to the adverse employment acts, [and] whether affirmative defenses are applicable."  Id. at 1294, n.7.

To better address the issues left undecided by the Eleventh Circuit, the court requested additional briefing from the parties.  On January 27, 2003, in response to the court's order, the defendants submitted a second motion for summary judgment [Doc. No. 35-1].  Chavis filed a response on February 18, 2003.  The court now assesses the defendants' motion.

## II.   **Summary Judgment Standard**

Summary judgment is proper only "if . . . there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The court is mindful that "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255. The plaintiff must do more, though, than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 474 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III.   Causal Connection

In its order remanding the instant action, the Eleventh Circuit found that Chavis had evidence sufficient to support his allegation that Pearson and Hairston retaliated against him for giving truthful testimony at the Walker hearing. Specifically, the Eleventh Circuit stated that "Chavis's evidenced allegations — that Defendants (because of their racial animosity towards DW) retaliated against Chavis for truthfully testifying to DW's advantage in court — could support a claim under section 1985(2)."[2] Chavis, 300 F.3d at 1294. However, shortly after asserting that

---

[2] At this juncture, the court notes that Chavis repeatedly asserts in his opposition to the defendants' second motion for summary judgment that "the [Eleventh] Circuit has previously recognized that there is already evidence of record to support Chavis's

Chavis evidences retaliatory action on the part of Hairston and Pearson, the Eleventh Circuit drops a footnote stating that it "express[es] no opinion" on the issue of "whether the alleged retaliation is causally connected to the adverse employment acts." Id. at 1294, n.7. Thus, although the Eleventh Circuit found that Chavis had evidence sufficient to demonstrate retaliation on the part of Pearson and Hairston, the Eleventh Circuit did not decide whether that retaliation was sufficiently related to the "adverse employment acts" taken by Hairston and Pearson to survive summary judgment. Accordingly, this issue is left "to the district court to determine in the first instance." Id.

In their second motion for summary judgment, the defendants assert two arguments regarding causation. First, the defendants contend that Chavis did not suffer any adverse employment action. According to the defendants, Chavis was laterally transferred from his position as Director of Certified Personnel to Coordinator of Student Services, a job with equivalent salary, prestige, and

---

allegations that he was transferred because he refused to discriminate against white employees, including refusing to give false testimony against Doris Walker." Pl.'s Br. at pp. 1, 6, 7, 8, 9, 15-17, 21. However, contrary to Chavis' repeated assertions, the Eleventh Circuit never held that Chavis was ordered or encouraged to give false testimony. In fact, the Eleventh Circuit expressly finds otherwise. Chavis, 300 F.3d at 1290. In the order remanding this case, the Eleventh Circuit states: "Although Plaintiff's brief claims that Plaintiff was ordered to give favorable testimony for the student-accuser, Plaintiff testified at his deposition that Pearson only ordered Plaintiff to go to the hearing to see if [Walker] changed her story. Plaintiff has never sworn that Pearson sent him to testify or that Pearson told him to testify untruthfully." Id. In the face of this explicit language, the repeated representations made by Chavis' counsel clearly mischaracterize the Eleventh Circuit's opinion.

responsibility.  Second, the defendants argue that there is no evidence linking Chavis' testimony in the Walker proceeding to the decision to transfer Chavis to the Student Services position.  Specifically, the defendants assert that the transfer is too remote in time from Chavis' testimony in the Walker proceeding to support any inference of causation.

Relying heavily on the Eleventh Circuit's factual findings, Chavis believes that the evidence of record is sufficient to withstand defendants' motion.  To begin with, Chavis asserts that the combination of actions taken against him by Hairston and Pearson in the months following the Walker proceeding constitute adverse employment actions.  Importantly, Chavis emphasizes that his transfer to the Coordinator of Student Services position meant less pay, prestige, and responsibility.  Moreover, Chavis contends that the causal connection between the retaliation and adverse acts is clear.  Namely, Chavis asserts that "the record is clear . . . in June of 1997, less than 4 months after [Chavis'] refusal to testify against Walker, Pearson told him the superintendent wanted him out of personnel and if he did not accept a guidance counselor or assistant principal position he would be fired."  Because Pearson and Hairston communicated their desire to demote him "less than 4 months after his refusal to testify against Walker," and they continued to "harass" him until his demotion to Coordinator of Student Services in December 1997, Chavis contends that the causal connection between the events is established.

-8-

As noted by the Eleventh Circuit, "[s]ection 1985(3) provides private parties a cause of action for violation of section 1985(2)." Chavis, 300 F.3d at 1291. Pursuant to section 1985(3), "if one or more persons engaged [in a conspiracy] do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured . . . , [then] the party so injured . . . may have an action for the recovery of damages." 28 U.S.C. § 1985(3). This language necessitates a causal connection between the conspiracy to retaliate and the injury to the plaintiff. See Puglise v. Cobb County, 4 F. Supp. 2d 1172, 1181 (N.D. Ga. 1998) (Story, J.) (finding that a civil conspiracy claim under section 1985(2) requires a showing that conspiracy caused a deprivation of plaintiffs' rights); see also Kinney v. Weaver, 301 F.3d 253, 266 (5th Cir. 2002) (stating that section 1985(3) requires injury to be caused by an act in furtherance of conspiracy); Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1129 (10th Cir. 1994) (holding that section 1985(2) retaliation claim requires proof of an "injury on account of having testified"); Oaks v. City of Fairhope, 515 F. Supp. 1004, 1041 (D. Ala. 1981) (finding that claim fails under section 1985(2) where there is no question of fact regarding causation).

In the classic retaliation claim, the causal connection requirement is to be construed broadly.[3] Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir.

---

[3] The court recognizes that it is relying on Title VII and other employment retaliation cases. However, the court feels this reliance is appropriate because the Eleventh Circuit utilized employment discrimination and retaliation terms of art in its instructions to this

1994).   When determining whether a causal link exists, the court is essentially

looking to see if any inference of retaliation can be drawn from the circumstances

surrounding the defendants' actions.  Morgan v. City of Jasper, 959 F.2d 1542, 1547

(11th Cir. 1997).  As such, circumstantial evidence can demonstrate causation, and

a plaintiff must only demonstrate that the protected activity and the negative

employment action are not wholly unrelated.  Id.; Holifield v. Reno, 115 F.3d 1555,

1567 (11th Cir. 1997).  If an employer is aware of an employee's protected expression

and an adverse employment action is taken against the employee shortly after the

expression, then the short amount of time between the two events, standing alone,

may be enough to produce an inference of retaliation.  Wideman v. Wal-Mart Stores,

Inc., 141 F.3d 1453, 1457 (11th Cir. 1998).

Construing the record evidence most favorably to Chavis, the court finds that

a genuine issue of material fact exists regarding the causal connection between

Hairston and Pearson's alleged retaliatory conspiracy and the purported adverse

employment acts taken against Chavis.  In his deposition, Chavis claims that, shortly

after the Walker investigation, Hairston and Pearson began harassing him.

Specifically, Chavis testifies that he and Pearson were "combatants" after his

testimony for Walker in February 1997.  He further testifies that the defendants'

---

court regarding causation.  Moreover, the standards used to assess causation in the
employment retaliation context can be logically applied in nearly any context where
causation is at issue.

harassment continued throughout the next several months and culminated in a direct threat to terminate him during June of 1997. At that time, Pearson allegedly informed Chavis that Hairston wanted Chavis out of the personnel department. Hairston purportedly gave Chavis two choices: take a position as a guidance counselor or assistant principal, or be fired. In response, Chavis interviewed for a guidance position in the Gwinnett County School District and was hired. When the defendants learned Chavis would be leaving the CCSD, they gave him a second chance. Chavis took that second chance and remained the Director of Certified Personnel until December of 1997.[4] He testifies that the retaliation and harassment by Hairston and Pearson continued from June until December.[5] Then, in December 1997, Chavis was allegedly demoted to the Coordinator of Student Services position.

---

[4] The court notes that, in the typical Title VII retaliation case, a ten-month lapse between the protected activity and the adverse employment act alleged by the employee is insufficient, as a matter of law, to survive summary judgment. See Maniccia v. Brown, 171 F.3d 1364, 1370 (11th Cir. 1999); Balletti v. Sun-Sentinel Co., 909 F. Supp. 1539, 1549 (S.D. Fla. 1995); Dixon v. Young, No. 3:98-CV-167-JTC, 2000 WL 33224515, at *9 (N.D. Ga. Sept. 21, 2000) (King, Mag. J.), aff'd, 265 F.3d 1066 (11th Cir. 2001). In this case, though, the court feels constrained to find an issue of fact, given the Eleventh Circuit's expansive view of the evidence on appeal. See Chavis, 300 F.3d at 1293. Further, Chavis alleges, without providing details, that the retaliatory acts and harassment began immediately after he testified for Walker. This testimony may be sufficient to link the Walker investigation to Chavis' transfer ten months later.

[5] However, at another point in his deposition, Chavis testifies that his relationship with Pearson had improved in the time before his transfer to Student Services. See Chavis Dep. p. 216, ll. 16-21.

Although the evidence conflicts on this issue, Chavis claims that this job was less prestigious and involved less responsibility than his former position.

Moreover, Hairston testifies that Chavis was transferred because the public had become aware that Pearson and Chavis were not getting along. According to Hairston, the CCSD School Board told him that the problem between these two men was an embarrassment which needed to be resolved. One of the central reasons Pearson and Chavis' relationship degenerated, according to Chavis, was Chavis' handling of the Walker investigation. Hairston admittedly resolved the perceived problem by transferring Chavis. Therefore, there is a question of fact as to whether Hairston's decision to transfer Chavis because of his public "combat" with Pearson actually resulted from Chavis' participation in the Walker investigation and magistrate court proceedings.

While this evidence is not overwhelming, construing the record and all legitimate inferences in Chavis' favor, there is an issue of fact for the jury regarding causation. Importantly, the court notes that, in his deposition, Chavis delineates other events that occurred during 1997 about which he admittedly expressed his views to Hairston and Pearson. Because any one of these events could have been the motivation for Chavis' transfer, these intervening events significantly weaken the causal connection between Chavis' testimony and the defendants' retaliation. Moreover, it is far from clear that Chavis' transfer was actually a demotion, and it

is far from clear what other actions taken by Pearson and Hairston constitute compensable harassment and retaliation.

## IV.   Intracorporate Conspiracy Doctrine

The next issue to be resolved by the court is whether Chavis can establish a conspiracy, as required for a claim under section 1985(2). Pursuant to the language of section 1985(2), a plaintiff must demonstrate that "two or more persons conspire[d]" to retaliate against the plaintiff. 42 U.S.C. § 1985(2). Without two separate actors, an essential element of the plaintiff's section 1985(2) conspiracy claim is absent. See Dickerson v. Alachua County Comm'n, 200 F.3d 761 (11th Cir. 2000). In the Eleventh Circuit, "[t]he intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of the conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000). Under the doctrine, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." Id.

The Eleventh Circuit explains as follows:

The doctrine is based on the nature of a conspiracy and the legal conception of a corporation. It is by now axiomatic that a conspiracy requires a meeting of the minds between two or more persons to accomplish a common and unlawful plan. However, under basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor. Therefore, just as it is not legally possible for an individual person to conspire with himself, it is not

-13-

> possible for a single legal entity consisting of the corporation and its agents to conspire with itself.

Id. In Dickerson v. Alachua County Commission, the Eleventh Circuit extended the intracorporate conspiracy doctrine, making the concept applicable to employees of a single public entity.  200 F.3d at 767; see also Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001); Chambliss v. Foote, 562 F.2d 1015 (5th Cir. 1977). Accordingly, employees of the same public entity cannot be found liable for a conspiracy amongst themselves.  Dickerson, 200 F.3d at 761.

In the instant lawsuit, Chavis has alleged a conspiracy, under section 1985(2), among the CCSD and two of its employees.  Chavis has not contested the defendants' assertion that Hairston and Pearson "were employed with the [CCSD] and acted within the scope of their employment with the [CCSD] at all times relevant hereto."  See McAndrew, 206 F.3d at 1036.  Accordingly, the Eleventh Circuit's holding in Dickerson dictates that, as employees of the same public entity, Hairston and Pearson cannot be found to have conspired amongst themselves.  200 F.3d at 761.  Unless an exception applies, the three defendants in this case—CCSD, Hairston, and Pearson—do not constitute distinct legal "persons," capable of conspiring under section 1985(2).  See Denney, 247 F.3d at 1190.

Despite the wide-ranging implications of the intracorporate conspiracy doctrine, the Eleventh Circuit has created an exception where the underlying

conspiracy is criminal.  McAndrew, 206 F.3d at 1038.  As such, the intracorporate conspiracy doctrine will not shield defendants from liability if the alleged conspiracy violates a criminal statute.  Id. at 1039-40.  This rationale applies even when a plaintiff seeks purely civil recovery under section 1985(2).  Id. at 1040-41.

For example, in McAndrew v. Lockheed Martin Corp., the Eleventh Circuit found the intracorporate conspiracy doctrine inapplicable to a claim under section 1985(2) "alleging an intracorporate conspiracy to deter a person from testifying in a court of law by force, intimidation, or threat, [because it] necessarily alleges a criminal conspiracy."  Id. at 1041.  Since the alleged conduct violated 18 U.S.C. § 1512, the federal criminal statute prohibiting tampering with a witness, and 18 U.S.C. § 317, the federal criminal conspiracy statute, the court found that the intracorporate conspiracy doctrine should not protect the McAndrew defendants. Id.  Accordingly, McAndrew holds that the intracorporate conspiracy doctrine is not a viable defense under section 1985(2), if the underlying conspiracy is criminal.  See Denney, 247 F.3d at 1190-91 (noting that, in McAndrew, the Eleventh Circuit found the intracorporate conspiracy doctrine "inapplicable to criminal conspiracy allegations under § 1985(2)"); see also Foster v. Pall Aeropower Corp., 111 F. Supp. 2d 1320 (M.D. Fla. 2000).

Therefore, to determine if the intracorporate conspiracy doctrine bars Chavis' claims in the instant action, the court must evaluate whether the underlying

conspiracy violates a criminal statute.  The defendants assert that "[t]here are no allegations in this case of any criminal conspiracy or criminal behavior on the part of the defendants." The defendants also argue that "[t]he conduct alleged concerns a purported demotion or adverse employment action taken against the plaintiff, and therefore, there is no reason that the intracorporate conspiracy doctrine would not be held applicable to the plaintiff's claims in this matter." Thus, according to the defendants, there is no crime, and the intracorporate conspiracy doctrine protects them from liability under section 1985(2).

However, the defendants presented their argument regarding the criminal nature of the underlying conspiracy without the benefit of Chavis' new affidavit, which was submitted to the court on February 18, 2003.  In that affidavit, Chavis addresses the Eleventh Circuit's finding that "Plaintiff has never sworn that Pearson sent him to testify or that Pearson told him to testify untruthfully." Chavis, 300 F.3d at 1290.  Accordingly, in his February 2003 affidavit, Chavis swears that he "was instructed by [Pearson] to go to the Clayton County Magistrate Court hearing for [Walker] . . . to be available to give testimony in support of [the student-accuser]." Chavis goes on to assert that, "[w]hile Pearson and Hairston did not tell [him] to lie in Court against Ms. Walker in those exact words, it was clear to [him] that was what they wanted [him] to do by the manner in which the conversations occurred and their conduct before and after this directive to assist the [student-accuser] and

-16-

give testimony in [the student-accuser's] 'favor.'" Chavis "took these directives from Hairston and Pearson as direct threats toward [him], and attempts to intimidate [him] into giving false testimony against Ms. Walker in the Magistrate Court." With the benefit of this belated evidence, Chavis asserts in his opposition brief that the defendants' conduct was clearly criminal.[6]

Despite this evidence, Chavis identified no statute in his brief making Hairston and Pearson's alleged conspiracy criminal. Although no applicable criminal statutes[7] were identified or explained by Chavis in his response to the defendants' motion for summary judgment, the court notes that, accepting the testimony in Chavis' new affidavit as true, a genuine issue of material fact exists

---

[6] The court notes that the affidavit submitted by Chavis is a completely self-serving affidavit with minimal factual support in the pre-existing record. Indeed, the document contradicts some of Chavis' own deposition testimony. Not unsurprisingly, the affidavit sets forth facts that the Eleventh Circuit found lacking in the record. That Chavis suddenly remembered these facts, after the Eleventh Circuit noted an evidentiary void, makes Chavis' affidavit highly suspect. Normally, such self-serving affidavits are entitled to little weight. See Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1142 (N.D. Ga. 1997) (Hull, J.). However, once again, the court feels constrained by the Eleventh Circuit's broad interpretation of the evidence in this case, and, at this point, no matter how suspect, evidence cannot be weighed by this court. Anderson, 477 U.S. at 255. Chavis' affidavit is more than a mere "scintilla of evidence." Id. at 252. But, at trial, Chavis' testimony on this issue can be subject to extensive cross-examination and impeachment.

[7] Chavis seems to indicate that Hairston and Pearson's conduct violates the same statutes identified by the plaintiff in McAndrew — 18 U.S.C. §§ 371, 1515. However, section 1515 applies only to "official proceeding[s]," which are limited by section 1512 to federal proceedings, and section 371 only applies to conspiracies to "commit any offense against the United States." Because Chavis' testimony was given at a state court proceeding, the federal statutes referenced by Chavis are irrelevant to his case, and his arguments otherwise demonstrate a misunderstanding of the law.

regarding whether the underlying conspiracy alleged by Chavis violates section 16-10-93 of the Georgia Code.  Under section 16-10-93(a),

> [a] person who, with intent to deter a witness from testifying freely, fully, and truthfully to any matter pending in any court . . . communicates, directly or indirectly, to such witness any threat of injury or damage to the person, property, or employment of the witness . . . shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.

Accepting Chavis' belated affidavit, a fact issue remains regarding whether Hairston and Pearson's actions satisfy the elements of section 16-10-93(a).  If they do, then the intracorporate conspiracy doctrine is inapplicable, and Chavis will have an opportunity to demonstrate that Hairston and Pearson conspired to retaliate against him.  However, if the evidence at trial shows that the underlying conspiracy alleged by Chavis does not violate any criminal statute, then the intracorporate conspiracy doctrine applies, and Chavis will be unable to demonstrate an essential element of his claim:  that "two or more persons conspire[d]" to injure him.

Thus, because Chavis has submitted an affidavit alleging that the defendants' behavior is criminal, summary judgment is inappropriate on the basis of the intracorporate conspiracy doctrine.

## V.    Qualified Immunity

In most lawsuits brought against government officials in their individual capacities, qualified immunity protects the officials from suit, as long as they have

not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Hope v. Pelzer, 122 S. Ct. 2508 (2002); Saucier v. Katz, 533 U.S. 194 (2001). Despite this general proposition, the Eleventh Circuit has "squarely held that qualified immunity is not available as a defense to a § 1985(3) claim." Johnson v. City of Fort Lauderdale, 126 F.3d 1372, 1379 (11th Cir. 1997). "Accordingly, public officials cannot raise a qualified immunity defense to a section 1985(3) claim." Burrell v. Board of Trustees, 970 F.2d 785, 794 (11th Cir. 1992).

In Burrell v. Board of Trustees, the Eleventh Circuit explained the reason that public officials could not claim the protection of qualified immunity in section 1985(3) actions. Id. Importantly, the Court of Appeals noted that "public officials [] will not be subject to liability under section 1985(3) unless their actions were motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" 970 F.2d 785, 794 (11th Cir. 1992) (quoting Lucero v. Operation Rescue of Birmingham, 954 F.2d 624, 627-28 (11th Cir. 1992)). According to the Eleventh Circuit, "[t]his narrow intent requirement erects a significant hurdle for section 1985(3) plaintiffs." Id. "Public officials thereby enjoy an additional protection against section 1985(3) actions . . . obviat[ing] the need for granting officials qualified immunity in section 1985(3) actions." Id. Therefore, because of the Eleventh Circuit's desire to expunge "racial, or perhaps otherwise class-based,

invidiously discriminatory animus" from actions taken by public officials, qualified immunity is not a viable defense against section 1985(3) claims in the this circuit. Gonzalez v. Lee County Housing Auth., 161 F.3d 1290, 1300 n.35 (11th Cir. 1998).

Like claims under section 1985(3), claims under the second clause of section 1985(2) — the statutory provision applicable in this case — require a demonstration of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); see also Chavis, 300 F.3d at 1292. As such, the intent element of a claim under section 1985(3) is identical to the intent element of a claim under the second clause of section 1985(2). Id. As noted by the Eleventh Circuit in Burrell, this "narrow intent element erects a significant hurdle" for section 1985(2) plaintiffs. 970 F.2d at 794. With this significant statutory hurdle in place, the protection afforded by the qualified immunity doctrine is unnecessary in section 1985(2) actions, just as it is unnecessary in section 1985(3) actions. Johnson, 126 F.3d at 1379. The court cannot meaningfully distinguish the Eleventh Circuit's rationale in Burrell from the situation before it and, therefore, believes that the Burrell rationale applies with equal force to section 1985(2) claims. Thus, the court finds that the doctrine of qualified immunity provides no defense to the individual defendants in this case.[8]

---

[8] Although the court finds that qualified immunity provides no defense to Hairston and Pearson in this case, the court notes that Chavis' brief did not raise the argument relied on by the court. Instead, the court, on its own, found the case law defeating the individual

## VI.   CCSD Liability

The final issue to be addressed by this court is "whether CCSD [can] be held

liable for Hairston and Pearson's alleged acts." Chavis, 300 F.3d at 1294, n.7.  In 1978,

the United States Supreme Court held that local governments and branches thereof

may not be held liable for constitutional deprivations under section 1983 on the

theory of *respondeat superior*.  Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  In

the Eleventh Circuit, this rule applies to school districts and boards.  Davis v.

DeKalb County Sch. Dist., 233 F.3d 1367 (11th Cir. 2000); Denno v. School Bd. of

Volusia County, 218 F.3d 1267 (11th Cir. 2000).  Instead of permitting *respondeat*

*superior* liability, local governmental entities "may be held liable only if such

constitutional torts result from an official government policy, the actions of an

official fairly deemed to represent government policy, or a custom or practice so

pervasive and well-settled that it assumes the force of law." Denno, 218 F.3d at 1276;

see also Monell, 436 U.S. at 694; Matthews v. Columbia County, 294 F.3d 1294, 1297

(11th Cir. 2002). While Monell specifically addressed liability for constitutional torts

under section 1983, the rationale has been extended to actions against local

---

defendants' arguments regarding qualified immunity.  In fact, to argue that Hairston and
Pearson are not entitled to qualified immunity, Chavis quotes extensively from a
newspaper article regarding oral arguments in a case not yet decided by the Eleventh
Circuit.  The court is unclear what precedential value Chavis believes this article has.
Chavis also relies on a case that has been specifically abrogated by the Supreme Court.  See
Hope, 122 S. Ct. at 2515, n.9.

governmental entities under section 1985. <u>Hamm v. Members of Bd. of Regents of the State of Fla.</u>, 708 F.2d 647, 650 (11th Cir. 1983) (recognizing that governmental entity could not be held responsible on a theory of respondeat superior under section 1985); <u>see also</u> <u>Owens v. Haas</u>, 601 F.2d 1242, 1247 (2d Cir. 1979) (holding that <u>Monell</u> applies with equal force in section 1983 and section 1985 claims); <u>Martin v. City of New York</u>, 627 F. Supp. 892, 898 (E.D.N.Y. 1985); <u>Eiland v. Hardesty</u>, 564 F. Supp. 930, 934 (N.D. Ill. 1982).

Because Chavis does not argue that the CCSD maintained any official policy of discrimination, nor does he argue that Hairston and Pearson have final policymaking authority in discipline and placement of teachers,[9] the resolution of Chavis' claim against the CCSD hinges on whether a custom or practice of discrimination existed. <u>Denno</u>, 218 F.3d at 1276. For the CCSD to be held liable under the custom or practice prong of <u>Monell</u>, Chavis must demonstrate that a

---

[9] On page twenty of his opposition brief, Chavis states that "Pearson and Hairston were the two policy makers and enforcers of that policy as the superintendent and director of personnel for the board." Chavis does not specifically argue that Pearson and Hairston had "final policymaking authority." However, even if Chavis were to present this argument, it would fail as a matter of law. It is undisputed that, at the time Hairston was superintendent, review procedures were in place for teachers to appeal disciplinary and other employment decisions made by Pearson and Hairston. <u>See</u> Doc. No. 16, Exh. C; <u>see also</u> Ga. Code Ann. § 20-2-940. Because these procedures provided "meaningful administrative review" of any of Hairston and Pearson's decisions, these individual defendants cannot be vested with "final policymaking authority" in the Eleventh Circuit. <u>Denno</u>, 218 F.3d at 1276-77; <u>see also</u> <u>Scala v. City of Winter Park</u>, 116 F.3d 1396 (11th Cir. 1997). Therefore, the only theory of entity liability available to Chavis is that Hairston and Pearson's actions constituted a pervasive custom or practice. <u>Denno</u>, 218 F.3d at 1276.

custom or practice of discrimination against white teachers within the CCSD is "so well-settled and pervasive that it assumes the force of law." Id. at 1277. In other words, Chavis must show a "persistent and widespread practice" of discrimination in discipline and promotion about which the CCSD had actual or constructive knowledge. Id. (quoting Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994)).

Throughout the instant lawsuit, Chavis has described a variety of disciplinary and promotional actions taken by Hairston and Pearson, which Chavis alleges are discriminatory. Specifically, Chavis reports what he believes to be discriminatory treatment of a variety of white teachers. Notably, Chavis discusses the demotion of Danny Langford, the resignation of David Knowles upon the promotion of Pearson, the Walker investigation, the Mickey Crawford investigation, the discipline of John Ireland, and the demotion of Glenice and Wayne Graves. Chavis describes these individuals as "victims" of Hairston and Pearson's discriminatory actions. For each person, Chavis tells the court how he or she was treated differently from African-American teachers and how he believes race played a role in Hairston and Pearson's actions. Taken together, these incidents create a genuine issue of material fact as to whether Hairston and Pearson developed and implemented a "persistent and widespread practice" of treating white teachers unfavorably. Denno, 218 F.3d at

1277.  In conjunction, these actions are not "random acts or isolated incidents."
<u>Church</u>, 30 F.3d at 1345.

Therefore, believing Chavis' evidence and drawing all justifiable inferences
in his favor, the court finds that a genuine issue of material fact exists as to whether
Hairston and Pearson's allegedly discriminatory actions rise to the level of a "custom
or practice so pervasive and well-settled that it assumes the force of law." <u>Id.</u> at
1343.  Accordingly, while Chavis' version of the facts remains to be proven at trial,
CCSD is not entitled to summary judgment.

## VII.   <u>Summary</u>

Based on the foregoing, the defendants' second motion for summary [Doc. No.
35-1] judgment is hereby DENIED.  Although the evidence supporting Chavis' case
is demonstrably thin, the court is not permitted, at this point, to assess the weight
of the evidence.  As such, the parties are ORDERED to submit their consolidated
pretrial order to the court within twenty (20) days of the issuance of this order.

SO ORDERED, this _13th_ day of March, 2003.


_Beverly B. Martin_
BEVERLY B. MARTIN
United States District Judge